No. 24-6160

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

PRATUM FARM, LLC,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE,

Defendant-Appellee.

————————————

On Appeal from the United States District Court
for the District of Oregon

————————————

**BRIEF FOR APPELLEE**

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

NATALIE K. WIGHT
  *United States Attorney*

MARK B. STERN
CAROLINE W. TAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7236*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-4171*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................. 1

STATEMENT OF JURISDICTION ...................................................... 4

STATEMENT OF THE ISSUE .............................................................. 4

PERTINENT STATUTES AND REGULATIONS .............................. 4

STATEMENT OF THE CASE ............................................................... 4

    A.    Statutory and Regulatory Background ................................ 4

    B.    Factual Background ............................................................. 9

    C.    District Court Litigation .................................................... 11

SUMMARY OF ARGUMENT ............................................................ 13

STANDARD OF REVIEW ................................................................. 15

ARGUMENT ....................................................................................... 15

THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF
LACKS STANDING TO CHALLENGE THE FINAL RULE. ............. 15

    A.    Standing requires a litigant to demonstrate a personal
           stake in the case. ............................................................... 15

    B.    Plaintiff has not suffered any injury-in-fact. ................... 17

           1.    Plaintiff's claim of reputational injury to the USDA
                  seal fails ................................................................. 19

           2.    Plaintiff has not established competitor injury. ............... 21

    C.    Any injury is not fairly traceable to the Final Rule. ......... 26

CONCLUSION ...................................................................................................... 29

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:**                                                          **Page(s)**

*Air Excursions LLC v. Yellen*,
66 F.4th 272 (D.C. Cir. 2023) ..................................................... 18, 22, 23, 25, 26

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ........................................................................... 22

*Bennett v. Spear*,
520 U.S. 154 (1997) ........................................................... 14-15, 26, 27

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................... 15-16, 18, 19, 20, 25

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........................................................................... 12

*International Bhd. of Teamsters v. U.S. Dep't of Transp.*,
861 F.3d 944 (9th Cir. 2017) ....................................................... 21, 23

*Kennedy v. Warren*,
66 F.4th 1199 (9th Cir. 2023) ...................................................... 20-21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................... 13, 16, 17, 20

*Mackinac Ctr. for Pub. Pol'y v. Cardona*,
102 F.4th 343 (6th Cir. 2024) .............................................. 22, 24, 25

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ............................................................ 15

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of
Health & Hum. Servs.*,
946 F.3d 1100 (9th Cir. 2020) ....................................... 15, 22, 23, 25

*Sherley v. Sebelius*,
610 F.3d 69 (D.C. Cir. 2010) ...........................................................21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .............................................................. 16, 17, 18

iii

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ................................................................ 2, 17

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................ 16

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................ 16, 18

*Valley Forge Christian Coll. v. Americans United for Separation
    of Church & State,*
    454 U.S. 464 (1982) ................................................................ 19

**U.S. Constitution:**

Art. III, § 2, cl. 1 ................................................................ 15

**Statutes:**

Administrative Procedure Act (APA):
    5 U.S.C. § 706(2)(A) ................................................................ 11
    5 U.S.C. § 706(2)(C) ................................................................ 11

Organic Foods Production Act of 1990:
    7 U.S.C. § 6501 ................................................................ 5
    7 U.S.C. § 6502(3) ................................................................ 6
    7 U.S.C. § 6503 ................................................................ 9
    7 U.S.C. § 6503(a) ................................................................ 5
    7 U.S.C. § 6503(d) ................................................................ 5
    7 U.S.C. § 6504 ................................................................ 5
    7 U.S.C. § 6505(a) ................................................................ 5
    7 U.S.C. § 6505(b) ................................................................ 5
    7 U.S.C. § 6505(d) ................................................................ 5
    7 U.S.C. § 6506(a) ................................................................ 9
    7 U.S.C. § 6506(a)(4) ................................................................ 6
    7 U.S.C. § 6506(a)(5) ................................................................ 5, 11
    7 U.S.C. §§ 6514-6515 ................................................................ 6

28 U.S.C. § 1291 ................................................................... 4

28 U.S.C. § 1331 ................................................................... 4

**Regulations:**

7 C.F.R. § 205.2 ................................................................... 6

7 C.F.R. § 205.201(c) ........................................................... 8

7 C.F.R. § 205.400(g)(4) ...................................................... 8

7 C.F.R. § 205.403 ............................................................... 8

7 C.F.R. § 205.403(a)(2)(iii) ................................................ 8

**Other Authorities:**

National Organic Program,
   65 Fed. Reg. 80548 (Dec. 21, 2000) ................................... 5

National Organic Program; Strengthening Organic Enforcement,
   85 Fed. Reg. 47536 (Aug. 5, 2020) ................................. 6-7, 7, 8, 28

National Organic Program (NOP); Strengthening Organic Enforcement,
   88 Fed. Reg. 3548 (Jan. 19, 2023) ....................... 1, 6, 7, 8, 9, 24, 28

## INTRODUCTION

To increase oversight and strengthen the integrity of the organic food market, the U.S. Department of Agriculture (USDA) in 2023 promulgated new standards governing the organic certification of "producer groups." *See* National Organic Program (NOP); Strengthening Organic Enforcement, 88 Fed. Reg. 3548 (Jan. 19, 2023) (Final Rule). Producer groups are collections of individual growers who share the costs of organic production by operating under one organic certificate. Among other things, the regulation requires producer groups to abide by stringent reporting requirements, to ensure that their internal quality control mechanisms follow consistent standards, and to permit on-site inspection of individual growers by a USDA-accredited certifying agent.

Plaintiff Pratum Farm, LLC is an organic hazelnut producer in Oregon. Plaintiff is not a member of a producer group and does not plan to become a member. Plaintiff nevertheless filed this action under the Administrative Procedure Act (APA) challenging as unlawful the provisions of the USDA Final Rule governing the producer group certification process. Plaintiff brought this action after learning of allegedly fraudulent and noncompliant practices by certain organically certified

Turkish hazelnut producer groups. Plaintiff asserts that these Turkish producers have managed to flout compliance requirements and thereby charge lower prices for their organic hazelnuts, undercutting plaintiff's competitive position in the marketplace and diminishing the integrity of the USDA seal, from which plaintiff derives certain benefits. The district court granted summary judgment for the government, concluding that plaintiff failed to establish it had standing to challenge the regulation.

The district court's judgment should be affirmed. Because plaintiff is not the object of the challenged action, its burden in establishing standing is "substantially more difficult." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quotations omitted). Plaintiff fails to carry that burden as to either theory of harm it advances. Plaintiff first asserts that it derives value from the USDA organic seal and that noncompliance by the Turkish producers diminished public confidence in the seal, thereby injuring plaintiff. But plaintiff cites no case law to support this expansive theory of standing, which is speculative at best. And as the district court recognized, plaintiff offered no factual basis for this theory of diminished value as required at the summary-judgment stage of litigation.

2

Plaintiff further complains that it has been harmed by certain Turkish hazelnut competitors who have managed to flout organic requirements yet still obtain organic certification, thereby charging lower prices to consumers and undercutting plaintiff's competitive position in the marketplace. But plaintiff does not—and cannot—establish any harm to competition caused by the challenged regulation. As a preliminary matter, there is no dispute that the Final Rule imposed new requirements on producer group operations. Plaintiff fails to explain how a regulation that burdens plaintiff's competitors can nevertheless injure plaintiff's competitive position.

In any event, plaintiff cannot demonstrate that any such harm is fairly traceable to the Final Rule. Plaintiff points to various actions taken by certain Turkish producer groups, but all of the complained-of conduct took place before the Final Rule was promulgated. Indeed, such actions implicate precisely the type of issues that the Final Rule was designed to mitigate. Additionally, as the district court explained, plaintiff attributes any competitive injury not to the challenged regulation but to "a failure on the part of its competitors to follow the law." ER-23. Plaintiff thus cannot

3

establish standing, and this Court should affirm the district court's
judgment.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C.
§ 1331. ER-226 (Compl. ¶ 3). The district court granted the government's
motion for summary judgment on September 30, 2024. ER-7–25 (opinion);
ER-6 (judgment). Plaintiff timely appealed on October 4, 2024. ER-276.
This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether plaintiff, who is not a member of a producer group, has
demonstrated standing to challenge a USDA regulation specifying the
organic certification standards for producer groups.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum
to this brief.

## STATEMENT OF THE CASE

### A.     Statutory and Regulatory Background

1. Congress passed the Organic Foods Production Act in 1990 to
establish national standards governing the "marketing of . . . organically

4

produced products" and to "assure consumers that organically produced products meet a consistent standard." 7 U.S.C. § 6501. To qualify as organic, agricultural products must generally be produced and handled without synthetic chemicals. *Id.* § 6504. Domestic products that meet the statutory and regulatory requirements can be marketed and labelled as organically produced and can be affixed with a label incorporating the USDA seal. *Id.* § 6505(a). Imported products must be produced and handled under an organic certification program with equivalent safeguards and guidelines. *Id.* § 6505(b). Small farmers who sell no more than $5,000 annually are exempt from these requirements. *Id.* § 6505(d).

USDA established the National Organic Program pursuant to specific statutory authorization in 2000. National Organic Program, 65 Fed. Reg. 80548 (Dec. 21, 2000); *see* 7 U.S.C. § 6503(a). The program is administered through third-party "certifying agents," who are accredited by USDA and conduct annual on-site inspections of organic farms and handling operations. 7 U.S.C. §§ 6503(d), 6506(a)(5). The agents may certify that the inspected entity meets the statutory and regulatory requirements for organic production and handling. *Id.* § 6503(d). Compliance must be

5

certified annually. *Id.* § 6506(a)(4). Certifying agents can be either a state governing officer or a private person. *Id.* §§ 6502(3), 6514–6515.

2. Since the National Organic Program was established, the demand for organic products has skyrocketed. *See* 88 Fed. Reg. at 3550. *See generally id.* at 3553 (organic sales jumped from $3.4 billion in 1997 to over $61 billion in 2020). Organic supply chains have also become more complex, making it harder to verify the integrity of organic products and resulting in documented cases of organic fraud, in which nonorganic products are deceptively marketed as organic. *Id.* at 3548–50.

"Producer groups," also known as "grower groups," have presented particularly difficult enforcement challenges. 88 Fed. Reg. at 3593. Producer groups are a collection of individual farmers and production units who are geographically proximate to one another and operate under one organic certificate, using a centralized system for handling, processing, and marketing their products. 7 C.F.R. § 205.2. Producer groups are governed by an internal quality control system, which is responsible for direct enforcement of organic requirements, including the inspection of all producer group members. *Id.*; *see* National Organic Program; Strengthening Organic Enforcement, 85 Fed. Reg. 47536, 47567 (Aug. 5,

6

2020).  A producer group's organic certificate applies to the producer group operation as a whole and not to any products that an individual group member might sell or market on its own.  85 Fed. Reg. at 47567.

Producer groups have existed in the organic industry for decades, but their operations have become increasingly complicated as the organic industry as a whole has grown.  88 Fed. Reg. at 3593.  Producer groups now may have thousands of members spread across a large area, and their systems for processing, handling and marketing products vary.  In the absence of clear governing criteria, these variations have posed problems for enforcement and compliance.  85 Fed. Reg. at 47568.

In 2020, USDA issued a notice of proposed rulemaking to strengthen oversight and enforcement of organic supply chains, including by promulgating new criteria for producer groups.  *See* 85 Fed. Reg. 47536. USDA stated that existing organic regulations "do not include specific provisions addressing the certification of grower groups," *id.* at 47567, and that there was "a clear need for specific criteria [that] grower groups must meet to qualify for organic certification, and practices certifying agents should use to inspect grower groups and assess compliance" of a group's internal quality control system, *id.* at 47568.  USDA thus proposed

7

adding—for the first time in the Code of Federal Regulations—specific provisions governing producer group certification. *Id.* at 47567–68. The agency received over 1,500 public comments on the proposed rule. 88 Fed. Reg. at 3552. Plaintiff did not submit any comments. ER-19.

In January 2023, USDA published the Final Rule. *See* 88 Fed. Reg. 3548. The Final Rule codified for the first time uniform standards governing the organic certification of producer group operations. *Id.*; *see* ER-273 (Compl. ¶ 156). As relevant here, the Final Rule mandates a two-tier oversight system to ensure compliance in producer group operations. In the first tier, a producer group is required to have an internal quality control system which would, among other things, inspect each member of a producer group for compliance with statutory and regulatory requirements. 88 Fed. Reg. at 3593, 3594, 3595, 3596 (codified at 7 C.F.R. §§ 205.400(g)(4), 205.201(c)). In the second tier, USDA-accredited certifying agents conduct on-site inspections of producer group operations, evaluating the group's internal quality control system and inspecting individually a certain number of member farms within the group, as set by formula. *Id.* at 3596 (codified at 7 C.F.R. § 205.403); *see id.* (codified at 7 C.F.R. § 205.403(a)(2)(iii)) (certifying agents "must inspect at least 1.4 times

8

the square root or 2% of the total number of producer group members, whichever is higher"). An agent has discretion to inspect more members, and an agent must inspect all members deemed to be high risk for organic noncompliance. *Id.* at 3596–97 (describing risk factors). No product may be sold or labelled as organically produced without passing USDA inspection. *See* 7 U.S.C. §§ 6503, 6506(a).

The Final Rule went into effect in March 2023. 88 Fed. Reg. at 3548. Covered entities had one year—until March 19, 2024—to become compliant. *Id.*

### B. Factual Background

Plaintiff Pratum Farm, LLC is a hazelnut farm in Salem, Oregon. ER-226–27 (Compl. ¶ 5). Plaintiff holds an organic crops certificate for hazelnuts issued by the Oregon Department of Agriculture. ER-227, 261 (Compl. ¶¶ 5, 119). Plaintiff is not a member of a producer group and has no plans to become such a member.

Plaintiff markets and sells its USDA-certified organic hazelnuts under the name of "Frankie's Oregon Organic Hazelnuts." ER-262 (Compl. ¶ 121). Plaintiff alleges that it costs more to process its organic hazelnuts than it does to process its non-organic hazelnuts, leading to a

corresponding price premium for organic hazelnuts. ER-254–55 (Compl. ¶¶ 91–94).

In 2022, before the Final Rule was published or went into effect, plaintiff alleges that it learned that five identified Turkish hazelnut producers were selling organic hazelnuts at negligible price premiums when compared to non-organic hazelnuts. ER-254–55 (Compl. ¶¶ 91, 95, 96). Plaintiff filed a complaint with the U.S. International Trade Commission, which allegedly revealed that the Turkish producers were "using the USDA organic seal" while engaged in "substantial fraud and noncompliant practices . . . in connection with issuing organic certifications." ER-257 (Compl. ¶¶ 103–104). Plaintiff alleged, for example, that the Turkish producers were not complying with the self-inspection internal compliance requirements of a producer group system, had "fraudulent buy/sell documentation relating to organic hazelnuts," and had "fraudulent farmer lists." ER-257–58 (Compl. ¶ 106). Plaintiff further alleged that USDA's administration of the Organic Foods Production Act was revealed to be the "root cause" of these widespread fraud problems. ER-257 (Compl. ¶ 104). Because the U.S. International Trade Commission "has limited jurisdiction and no power or authority to administrate organic

10

certifications," plaintiff dropped its complaint with the Commission and sought relief from USDA.  ER-257 (Compl. ¶ 105).

Plaintiff filed a private-party complaint with USDA in July 2023, asking the Department to revoke the accreditation of the five foreign certifiers who were responsible for certifying the Turkish hazelnut producers.  ER-259 (Compl. ¶ 108).  The relevant USDA office referred the complaint to the National Organic Program for review.  ER-16.

### C.    District Court Litigation

In October 2023, plaintiff filed this lawsuit.  Plaintiff challenges the regulatory provision governing the on-site inspection of producer groups as exceeding USDA's statutory authority and as arbitrary and capricious under the APA.  ER-274 (Compl. ¶ 162) (citing 5 U.S.C. § 706(2)(A), (C)).  Plaintiff contends that the Final Rule's provision permitting the organic certification of a producer group without requiring a certifying agent to inspect all member farms violates the statutory requirement that USDA "provide for annual on-site inspection by the certifying agent of each farm and handling operation" and "creates an inconsistent standard" regarding farm inspections.  ER-273–74 (Compl. ¶¶ 158–161) (quoting 7 U.S.C. § 6506(a)(5)).

11

The district court granted the government's motion for summary judgment on the ground that plaintiff, who is not a member of a producer group, lacked standing to challenge the Final Rule's provisions governing producer group certification. ER-14, 24–25. The court held that plaintiff suffered no concrete harm. ER-24. The court first rejected plaintiff's claim of injury based on an asserted harm to the reputational value of the USDA organic seal, which plaintiff affixes to its products and from which it derives some benefit. ER-22. The court concluded that this claim was "speculative" and contrary to the record in the case, which showed that the public highly valued the USDA seal. ER-24. The court also rejected plaintiff's claim of competitive harm, explaining that "to the extent Plaintiff alleges that it is being placed at a competitive disadvantage, Plaintiff attributes that disadvantage not to the challenged regulation, but to a failure on the part of its competitors to follow the law." ER-23.[1] The court also explained that even if plaintiff could establish that the Final Rule

---

[1] The district court also held that to the extent plaintiff attributes any such injury to "a failure on the part of USDA to adequately enforce" the law, plaintiff "does not purport to challenge USDA's enforcement discretion, and even if it had, such a challenge would be presumptively unreviewable." ER-23 (citing *Heckler v. Chaney*, 470 U.S. 821, 842–43 (1985)). Plaintiff does not challenge this characterization on appeal.

generally benefited its competitors, that does not itself confer Article III standing; a plaintiff must still show how the challenged regulation increased competition in the marketplace, which plaintiff here failed to do. ER-24.

Because the court concluded that plaintiff lacked standing, it declined to reach the merits of plaintiff's APA claim. ER-25.

## SUMMARY OF ARGUMENT

The district court correctly held that plaintiff lacked standing to challenge the Final Rule's provisions governing producer group organic certification. Standing is "'substantially more difficult' to establish" when the party bringing suit "is not himself the object of the government action or inaction he challenges." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). Because plaintiff is not a producer group member, plaintiff attempts to establish standing by invoking an asserted interest in the reputation of the USDA seal and the doctrine of competitor standing. Both theories fall far short of Article III's requirements.

Plaintiff cannot establish reputational injury based not on the Final Rule's alleged harm to its own reputation, but to the asserted diminishment in respect for the value of USDA's seal. Plaintiff cites no

13

cases supporting this expansive theory of standing, and, as the district court held, plaintiff fails to show that the USDA seal has actually suffered any harm to its reputation as required at the summary-judgment stage. Similarly, plaintiff cannot establish competitor standing because it has failed to show how the Final Rule has led to increased competition in the marketplace. Indeed, the Final Rule imposes more onerous requirements on plaintiff's competitors, undermining any argument that plaintiff has actually suffered any harm to its competitive standing in the relevant market.

More fundamentally, plaintiff has failed to show how any harm is fairly traceable to the challenged regulation itself. Plaintiff complains that it has been harmed by the various activities of certain Turkish hazelnut producers, but all of the identified actions took place before the Final Rule was promulgated. Such actions, indeed, implicate precisely the type of issues that the Final Rule was designed to mitigate. Moreover, as the district court observed, plaintiff's asserted harm is based on the "independent action of some third party not before the court," *Bennett v.*

14

*Spear*, 520 U.S. 154, 167 (1997), further establishing that plaintiff cannot

meet the traceability element of standing. This Court should affirm.[2]

## STANDARD OF REVIEW

This Court reviews standing de novo. *Planned Parenthood of Greater*

*Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108

(9th Cir. 2020). A district court's grant of summary judgment is also

reviewed de novo. *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 991

(9th Cir. 2023).

## ARGUMENT

### THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF LACKS STANDING TO CHALLENGE THE FINAL RULE.

#### A.  Standing requires a litigant to demonstrate a personal stake in the case.

Article III of the Constitution limits the jurisdiction of federal courts

to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "'One

element of the case-or-controversy requirement' is that plaintiffs 'must

establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568

---

[2] On appeal, plaintiff briefs only the standing issue and does not ask
for a ruling on the merits of its APA claim. Br. 52. Thus, even if this Court
were to reverse the district court's standing decision, the proper remedy is
to remand the case back to the district court to address the merits question
in the first instance.

U.S. 398, 408 (2013).  Under our system of limited and separate government, a federal court may only exercise jurisdiction to resolve "a real controversy with real impact on real persons."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quotations omitted).  Federal courts "do not possess a roving commission to publicly opine on every legal question" and they "do not exercise general legal oversight of the Legislative and Executive Branches."  *Id.* at 423–24.

To demonstrate standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The injury-in-fact requirement helps to ensure that the plaintiff has a "personal stake in the outcome of the controversy."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotations omitted).  The party invoking federal jurisdiction "bears the burden of establishing these elements" and, at the summary-judgment stage, must offer a "factual showing of perceptible harm."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 566 (1992).  That burden is "'substantially more difficult' to establish" where, as here, the party bringing suit is not "the object of the government action or inaction

16

he challenges." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Lujan*, 504 U.S. at 562).

Plaintiff fails to meet this significant burden. Plaintiff is not a member of a producer group, does not plan to become a member of a producer group, and has no interest in the Final Rule other than a generalized interest in producer group certifications. Plaintiff's theories of injury instead rest on the effects that the Final Rule would have on (1) the reputation of USDA's organic seal (from which plaintiff derives certain benefits) and (2) the competitive marketplace for organic hazelnuts. But the harm to plaintiff under either theory is speculative at best. The court also correctly noted that any injury would not be fairly traceable to the Final Rule because they rest upon the allegedly illegal actions of third-party hazelnut producers who are not part of this lawsuit.

**B.  Plaintiff has not suffered any injury-in-fact.**

"Injury in fact is a constitutional requirement . . . ." *Spokeo*, 578 U.S. at 339. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). A "'concrete' injury must be '*de facto*';

17

that is, it must actually exist." *Id.* at 340. A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 339 (quotations omitted). And to show an "actual or imminent" injury, "allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (alteration and quotations omitted). Rather, a plaintiff relying on an injury that has not yet occurred must demonstrate that "the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Any lesser requirement "would vitiate Article III's case or controversy requirement and permit a business to superintend its industry's regulatory scheme, even if the agency action at issue threatens the business with only highly attenuated or wholly speculative consequences." *Air Excursions LLC v. Yellen*, 66 F.4th 272, 281 (D.C. Cir. 2023).

As the district court explained, plaintiff fails to show any concrete harm arising from the Final Rule. The challenged portion of the regulation establishes standards for producer group certification, but plaintiff is not a member of a producer group and does not plan to become a member of a producer group, and nothing about the challenged rule would affect plaintiff's ability to continue selling organic hazelnuts. Plaintiff's two

18

theories of harm fail for the reasons below and provide an independent reason to affirm.

> **1.** **Plaintiff's claim of reputational injury to the USDA seal fails.**

Plaintiff argues that the Final Rule undermines the integrity of the organic certification process and therefore the reputation of the USDA seal, from which plaintiff derives certain benefits. *See* Br. 41. Plaintiff thus asserts reputational injury based not on any harm to its own reputation, but on an asserted harm to the reputation of the USDA seal. Plaintiff cites no support for this expansive theory of standing, which contravenes the well-established principle that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 474 (1982) (quotations omitted).

Nor is the asserted reputational injury "certainly impending." *Clapper*, 568 U.S. at 410. Plaintiff's theory of injury is based on a "highly attenuated chain of possibilities," in which the Final Rule leads to underenforcement in the organic industry and undermines public trust in the USDA organic certification program, thereby hurting the reputation of

19

the USDA seal and ultimately harming plaintiff's right to benefit from use of the seal.  *Id.*; *see* Br. 41.  Such a "speculative chain of possibilities" is insufficient to confer Article III standing.  *Clapper*, 568 U.S. at 414.

The speculative nature of this theory is underscored by plaintiff's inability to offer the "factual showing of perceptible harm" required at this stage in the litigation.  *Lujan*, 504 U.S. at 566.  "Standing is not 'an ingenious academic exercise in the conceivable[.]'"  *Id.*  At summary judgment, a plaintiff must "'set forth' by affidavit or other evidence 'specific facts'" to show an imminent and concrete harm.  *Clapper*, 568 U.S. at 412 (quotations omitted).  Plaintiff, however, offers no showing of a necessary component of its already-attenuated theory of injury:  that the USDA seal has suffered any reputational infirmity.  As the district court correctly observed, the "record shows that the public and producers highly value the USDA organic seal and are willing to pay higher premiums as a result," and plaintiff's own efforts in this case underscore the ongoing value of the USDA seal.  ER-24.

Although plaintiff purports to identify evidence of reputational harm that the district court overlooked, none of plaintiff's observations are remotely related to any public perceptions of the USDA seal.  *Cf. Kennedy v.*

*Warren*, 66 F.4th 1199, 1206 (9th Cir. 2023) (reputational harm is about stigma and public perceptions). Plaintiff merely reiterates various statements regarding its own certificate and the alleged actions of certain Turkish hazelnut producers, *see* Br. 27–35, 44–45, but plaintiff fails to connect any of those observations to any injury to perceptions of the USDA seal. Plaintiff's generic references to the Lanham Act, a federal trademark statute, also fail to cure the deficiency in this case brought under the APA. *See* Br. 50–51. Without any showing of reputational damage to the USDA seal, plaintiff cannot prevail on what is already a highly attenuated theory of standing.

### 2. Plaintiff has not established competitor injury.

The competitor-standing doctrine recognizes that "economic actors suffer an injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." *International Bhd. of Teamsters v. U.S. Dep't of Transp.* (*Teamsters*), 861 F.3d 944, 950 (9th Cir. 2017) (quoting *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010)). The doctrine is grounded in the "basic law of economics that increased competition leads to actual injury." *Id.* (quotations omitted). In this way, the doctrine is an application of well-established Article III

principles. A "party invoking competitor standing does not have to wait for the harm to materialize." *Mackinac Ctr. for Pub. Pol'y v. Cardona* (*Mackinac*), 102 F.4th 343, 351 (6th Cir. 2024). The injury is the "increase in competition" itself, "rather than the ultimate denial of an application, the loss of sales, or the loss of a job." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). The doctrine of competitor standing thus "supplies the link between increased competition and tangible injury." *Mackinac*, 102 F.4th at 352 (quotations omitted).

The doctrine does not, however, "supply the link between the challenged conduct and increased competition." *Mackinac*, 102 F.4th at 352 (quoting *Air Excursions*, 66 F.4th at 281). The Supreme Court has rejected "a boundless theory of standing" in which "a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful—whether a trademark, the awarding of a contract, a landlord-tenant arrangement, or so on." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013); *see Mackinac*, 102 F.4th at 354 ("[T]he mere fact that Plaintiff['s] competitors may benefit from the [government action] is insufficient to establish competitor standing."); *Air Excursions*, 66 F.4th at

22

280 ("[A]n agency action does not confer competitor standing if it merely creates a skewed playing field, by, for example, providing a 'windfall' to a competitor[.]" (alteration and citations omitted)).

Rather, a plaintiff must show that the challenged agency action resulted in "an actual or imminent increase in competition." *Air Excursions*, 66 F.4th at 279 (quotations omitted); *see Teamsters*, 861 F.3d at 951. A plaintiff may make this showing by pointing to the nature of the challenged action itself—for example, if the challenged action "allows new entrants into a fixed regulated market," "lifts price controls on a firm's competitor," or "reimburses a firm's competitor for selling its product or service at discounted rates." *Air Excursions*, 66 F.4th at 280. Accordingly, this Court has recognized competitor standing where the challenged action has both a logical and a direct effect on competition. *See Teamsters*, 861 F.3d at 951 (direct entry of new competitors into the market); *Planned Parenthood*, 946 F.3d at 1109 (direct alteration of federal grant-making criteria that undermined the plaintiff's ability to compete). In some cases, an increase in competition can be "obvious"—for instance, if "the action directly impacts a competitor and does not necessarily depend on the independent

23

actions of third parties." *Mackinac*, 102 F.4th at 352 (alterations and quotations omitted).

The district court correctly held that plaintiff has not established competitor standing. Plaintiff's theory of injury is that the Final Rule subjects producer groups to less onerous certification requirements than individual farms, enabling producer groups to save on certification costs, sell their organic products for less, and ultimately undercut plaintiff's competitive position in the organic hazelnut market. Br. 46–48.

As a preliminary matter, it is far from obvious that the Final Rule results in any increase in competition. The Final Rule does not add market entrants, remove price controls, or otherwise benefit producer groups in any direct way. To the contrary: It makes USDA certification more onerous for producer groups, subjecting these entities to more specific regulations—within a pre-existing certification framework—designed to increase oversight of producer group operations. For example, the Final Rule requires all producer groups to meet stringent reporting requirements, pass internal quality control standards, and permit on-site inspections of individual farms. 88 Fed. Reg. at 3593. Plaintiff fails to explain how a regulation that burdens its competitors can nevertheless

24

injure plaintiff's competitive standing in the marketplace. And to the extent plaintiff's argument is instead that USDA unlawfully failed to do *more* to burden producer groups, the law is clear that a federal court is not a forum for the "airing of generalized grievances." *Planned Parenthood*, 946 F.3d at 1108. Nor, in any event, can a plaintiff establish a competitive injury merely by identifying some benefit provided to a competitor, even if that benefit is a windfall. *Air Excursions*, 66 F.4th at 280.

Plaintiff has also failed to show that any such competitive harm is "certainly impending." *Clapper*, 568 U.S. at 410; *see Mackinac*, 102 F.4th at 354 ("Economic disadvantage alone is not enough, nor is speculation." (citation and quotations omitted)). As the district court recognized, plaintiff failed to make any showing of increased competition in the relevant market as required at the summary-judgment stage. ER-23–24. Plaintiff's theory of injury instead rests on a "speculative chain of possibilities" regarding the effect that the Final Rule's inspection provision — requiring some individual growers in a producer group to be inspected on-site rather than requiring all growers within a producer group to be so inspected — would have on the producer group's pricing and ultimate share of the organic hazelnut market. *Clapper*, 568 U.S. at 414; *see*

25

*Air Excursions*, 66 F.4th at 279–81 (no standing where the plaintiff failed to connect the challenged action to the competitor's pricing decision). This failure is an independent reason to affirm.

### C. Any injury is not fairly traceable to the Final Rule.

A plaintiff must also show that the asserted injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The district court correctly held that plaintiff failed to make this showing. ER-23–24.

The ultimate source of injury in plaintiff's theory is the allegedly unlawful actions of various Turkish hazelnut processors. The complaint alleges that Turkish competitors are engaging in "substantial fraud and noncompliant practices," including "fraudulent buy/sell documentation," "fraudulent farmer lists," and violations of the "self-inspection or 'internal inspector' requirements under the grower group spot check/honor system." ER-257–58 (Compl. ¶¶ 104, 106). Plaintiff's opening brief reiterates these points, identifying various Turkish processors with organic certificates that plaintiff asserts falsely represents their compliance with organic standards. Br. 28–31, 45–48. Plaintiff asserts that this behavior

26

enables the Turkish processors to save on certification costs and offer its organic hazelnuts at lower prices, placing plaintiff at a competitive disadvantage.  Br. 45–46.

But plaintiff does not—and cannot—establish any causal link between these asserted harms and the Final Rule.  Indeed, each of the organic certificates described above was issued before the Final Rule was published and went into effect in 2023.  *See* ER-163 (Udex certificate issued in 2020); ER-210 (Yilmaz certificate issued in 2021); ER-181 (Ekotar certificate issued in 2021); ER-159 (Nimeks certificate issued in 2022); ER-185–86 (Arslantürk certificate issued in 2022).  And, to the extent plaintiff also complains of harm based on the Turkish producers' alleged fraud, the district court correctly concluded that such harm is based on an alleged "failure on the part of [plaintiff's] competitors to follow the law," rather than on the action being challenged in this case.  ER-23; *see Bennett*, 520 U.S. at 167.

Accordingly, none of plaintiff's asserted injuries are fairly traceable to the Final Rule, including the provision regarding the number of on-site inspections a certifying agent must complete when evaluating a producer group operation.  Plaintiff asserts that its "primary fraud problem" lies

27

with "USDA's creation of an allegedly illegal regulation." Br. 43. But, as discussed, to the extent that the challenged regulation bears on plaintiff's complaints, the regulation serves only to ameliorate concerns with organic noncompliance by strengthening the certification requirements for producer groups. As discussed, the regulation added specific provisions regulating producer groups after USDA observed inconsistent enforcement and poor organic compliance among producer groups. 85 Fed. Reg. at 47568; 88 Fed. Reg. at 3548. Plaintiff's claims of injury are thus based not on the regulation itself, but on the state of affairs that existed before the regulation was promulgated and for which it was specifically designed to address.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

NATALIE K. WIGHT
*United States Attorney*

MARK B. STERN

*s/ Caroline W. Tan*

CAROLINE W. TAN
*Attorneys, Appellate Staff
Civil Division, Room 7236
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 616-4171
caroline.tan@usdoj.gov*

January 2025

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellee states that she knows of no related case pending in this Court.

*s/ Caroline W. Tan*

Caroline W. Tan

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-6160

I am the attorney or self-represented party.

**This brief contains** 5,442 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated　　　　　.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Caroline W. Tan **Date** 1/17/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

**ADDENDUM**

## TABLE OF CONTENTS

7 U.S.C. § 6501 ........................................................................... A1

7 U.S.C. § 6502 ........................................................................... A1

7 U.S.C. § 6503 ........................................................................... A2

7 U.S.C. § 6504 ........................................................................... A2

7 U.S.C. § 6505 ........................................................................... A3

7 U.S.C. § 6506 ........................................................................... A4

7 U.S.C. § 6514 ........................................................................... A4

7 U.S.C. § 6515 ........................................................................... A5

7 C.F.R. § 205.2 ........................................................................... A5

7 C.F.R. § 205.201(c) ................................................................... A6

7 C.F.R. § 205.400 ....................................................................... A6

7 C.F.R. § 205.403 ....................................................................... A7

**7 U.S.C. § 6501**

**§ 6501. Purposes**

It is the purpose of this chapter –

(1)  to establish national standards governing the marketing of certain agricultural products as organically produced products;

(2)  to assure consumers that organically produced products meet a consistent standard; and

(3)  to facilitate interstate commerce in fresh and processed food that is organically produced.

**7 U.S.C. § 6502**

**§ 6502.  Definitions**

As used in this chapter;

(3)  Certifying agent.

(A)  In general.

The term "certifying agent" means the chief executive officer of a State or, in the case of a State that provides for the Statewide election of an official to be responsible solely for the administration of the agricultural operations of the State, such official, and any person (including private entities) who is accredited by the Secretary as a certifying agent for the purpose of certifying a farm or handling operation as a certified organic farm or handling operation in accordance with this chapter.

(B)  Foreign operations

When used in the context of a certifying agent operating in a foreign country, the term "certifying agent" includes any person (including a private entity) –

(i)  accredited in accordance with section 6514(d) of this title; or

(ii)  accredited by a foreign government that acted under an equivalency agreement negotiated between the United States and the foreign government from which the agricultural product is imported.

**7 U.S.C. § 6503**

**§ 6503.  National organic production program**

**(a)  In general**

The Secretary shall establish an organic certification program for producers and handlers of agricultural products that have been produced using organic methods as provided for in this chapter.

. . .

**(d)  Certification**

The Secretary shall implement the program established under subsection (a) through certifying agents.  Such certifying agents may certify a farm or handling operation that meets the requirements of this chapter and the requirements of the organic certification program of the State (if applicable) as an organically certified farm or handling operation.

**7 U.S.C. § 6504**

**§ 6504.  National standards for organic production**

To be sold or labeled as an organically produced agricultural product under this chapter, an agricultural product shall—

(1)  have been produced and handled without the use of synthetic chemicals, except as otherwise provided in this chapter;

(2)  except as otherwise provided in this chapter and excluding livestock, not be produced on land to which any prohibited substances, including synthetic chemicals, have been applied during the 3 years immediately preceding the harvest of the agricultural products; and

(3)  be produced and handled in compliance with an organic plan agreed to by the producer and handler of such product and the certifying agent.

A2

**7 U.S.C. § 6505**

**§ 6505.  Compliance requirements**

**(a)  Domestic products**

**(1)  In general**

On or after October 1, 1993 –

(A)  a person may sell or label an agricultural product as organically produced only if such product is produced and handled in accordance with this chapter; and

(B)  no person may affix a label to, or provide other market information concerning, an agricultural product if such label or information implies, directly or indirectly, that such product is produced and handled using organic methods, except in accordance with this chapter.

**(2)  USDA standards and seal**

A label affixed, or other market information provided, in accordance with paragraph (1) may indicate that the agricultural product meets Department of Agriculture standards for organic production and may incorporate the Department of Agriculture seal.

**(b)  Imported products**

Imported agricultural products may be sold or labeled as organically produced if the Secretary determines that such products have been produced and handled under an organic certification program that provides safeguards and guidelines governing the production and handling of such products that are at least equivalent to the requirements of this chapter.

. . .

**(d)  Small farmer exemption**

Subsection (a)(1) shall not apply to persons who sell no more than $5,000 annually in value of agricultural products.

A3

**7 U.S.C. § 6506**

**§ 6506.  General requirements**

**(a)  In general**

A program established under this chapter shall –

(1)  provide that an agricultural product to be sold or labeled as organically produced must –

(A)  be produced only on certified organic farms and handled only through certified organic handling operations in accordance with this chapter; and

(B)  be produced and handled in accordance with such program;

. . .

(4)  require each certified organic farm or each certified organic handling operation to certify to the Secretary, the governing State official (if applicable), and the certifying agent on an annual basis, that such farm or handler has not produced or handled any agricultural product sold or labeled as organically produced except in accordance with this chapter;

(5)  provide for annual on-site inspection by the certifying agent of each farm and handling operation that has been certified under this chapter;

. . .

**7 U.S.C. § 6514**

**§ 6514.  Accreditation program**

**(a)  In general**

The Secretary shall establish and implement a program to accredit a governing State official, and any private person, that meets the requirements of this section as a certifying agent for the purpose of certifying a farm or handling operation as a certified organic farm or handling operation.

**(b) Requirements**

To be accredited as a certifying agent under this section, a governing State official or private person shall –

(1) prepare and submit, to the Secretary, an application for such accreditation;

(2) have sufficient expertise in organic farming and handling techniques as determined by the Secretary; and

(3) comply with the requirements of this section and section 6515 of this title.

. . .

**7 U.S.C. § 6515**

**§ 6515. Requirements of certifying agents**

**(a) Ability to implement requirements**

To be accredited as a certifying agent under section 6514 of this title, a governing State official or a person shall be able to fully implement the applicable organic certification program established under this chapter.

. . .

**7 C.F.R. § 205.2**

**§ 205.2. Terms defined.**

*Producer group member.* An individual engaged in the activity of producing or harvesting agricultural products as a member of a producer group operation.

*Producer group operation.* A producer, organized as a person, consisting of producer group members and production units in geographic proximity governed by an internal control system under one organic system plan and certification.

**7 C.F.R. § 205.201(c)**

**§ 205.201.  Organic production and handling system plan.**

. . .

(c)  In addition to paragraph (a) of this section, a producer group operation's organic system plan must describe its internal control system. The description of the internal control system must:

(1)  Define the organizational structure, roles, and responsibilities of all personnel;

(2)  Identify producer group production units and locations;

(3)  Describe measures to protect against potential conflicts of interest and protect internal control system personnel from retribution;

. . .

(9)  Describe the system of records used to demonstrate compliance with this part, including traceability and mass-balance audits; and

(10)  Describe how internal monitoring, surveillance, inspection, sanctions, and auditing are used to assess the compliance of all producer group members.

**7 C.F.R. § 205.400(g)(4)**

**§ 205.400.  General requirements for certification.**

. . .

(g)  In addition to paragraphs (a) through (f) of this section, a producer group operation must:

. . .

(4)  Maintain an internal control system to implement the practices described in § 205.201(c) and ensure compliance with this part;

. . .

A6

**7 C.F.R. § 205.403**

**§ 205.403.  On-site inspections**

(a) On-site inspections.

(1)  A certifying agent must conduct an initial on-site inspection of each production unit, facility, and site that produces or handles organic products and that is included in an operation for which certification is requested. An on-site inspection shall be conducted annually thereafter for each certified operation that produces or handles organic products for the purpose of determining whether to approve the request for certification or whether the certification of the operation should continue.

(2)  Inspections of a producer group operation must:

(i)  Assess the internal control system's compliance, or ability to comply, with the requirements of § 205.400(g)(8).  This must include review of the internal inspections conducted by the internal control system.

(ii)  Conduct witness audits of internal control system inspectors performing inspections of the producer group operation.

(iii)  Individually inspect at least 1.4 times the square root or 2% of the total number of producer group members, whichever is higher. All producer group members determined to be high risk by the certifying agent must be inspected. At least one producer group member in each producer group production unit must be inspected.

(iv)  Inspect each handling facility.

(3)

(i)  A certifying agent may conduct additional on-site inspections of applicants for certification and certified operations to determine compliance with the Act and the regulations in this part.

A7

(ii)  The Administrator or State organic program's governing State official may require that additional inspections be performed by the certifying agent for the purpose of determining compliance with the Act and the regulations in this part.

(iii)  Additional inspections may be announced or unannounced at the discretion of the certifying agent or as required by the Administrator or State organic program's governing State official.

. . .